# United States Court of Appeals
# for the Federal Circuit

―――――――――

## IN RE: RAY SMITH, AMANDA TEARS SMITH,
*Appellants*

―――――――――

2015-1664

―――――――――

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. 12/912,410.

―――――――――

Decided: March 10, 2016

―――――――――

MARK ALAN LITMAN, Mark A. Litman & Associates, P.A., Edina, MN, argued for appellants.

SCOTT WEIDENFELLER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Michelle K. Lee. Also represented by THOMAS W. KRAUSE, ROBERT MCBRIDE.

―――――――――

Before MOORE, HUGHES, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Ray and Amanda Tears Smith (collectively, "Applicants") appeal the final decision of the Patent Trial and Appeal Board ("Board") affirming the rejection of claims 1–18 of U.S. Patent Application No. 12/912,410 ("the '410 patent application") for claiming patent-ineligible subject matter under 35 U.S.C. § 101. Because the claims cover

only the abstract idea of rules for playing a wagering game and use conventional steps of shuffling and dealing a standard deck of cards, we affirm.

BACKGROUND

On October 26, 2010, Applicants filed the '410 patent application, titled "Blackjack Variation." According to the application, "[t]he present invention relates to a wagering game utilizing real or virtual standard playing cards." Joint Appendix ("J.A.") 258. Claim 1, which the Board analyzed as representative, recites:

1. A method of conducting a wagering game comprising:

[a]) a dealer providing at least one deck of . . . physical playing cards and shuffling the physical playing cards to form a random set of physical playing cards;

[b]) the dealer accepting at least one first wager from each participating player on a player game hand against a banker's/dealer's hand;

[c]) the dealer dealing only two cards from the random set of physical playing cards to each designated player and two cards to the banker/dealer such that the designated player and the banker/dealer receive the same number of exactly two random physical playing cards;

[d]) the dealer examining respective hands to determine in any hand has a Natural 0 count from totaling count from cards, defined as the first two random physical playing cards in a hand being a pair of 5's, 10's, jacks, queens or kings;

[e]) the dealer resolving any player versus dealer wagers between each individual player hand that has a Natural 0 count and between the dealer hand and all player hands where a Natural

0 is present in the dealer hand, while the dealer exposes only a single card to the players;

[f]) as between each player and the dealer where neither hand has a Natural 0, the dealer allowing each player to elect to take a maximum of one additional card or standing pat on the initial two card player hand, while still having seen only one dealer card;

[g]) the dealer/banker remaining pat within a first certain predetermined total counts and being required to take a single hit within a second predetermined total counts, where the first total counts range does not overlap the second total counts range;

[h]) after all possible additional random physical playing cards have been dealt, the dealer comparing a value of each designated player's hand to a final value of the banker's/dealer's hand wherein said value of the designated player's hand and the banker's/dealer's hand is in a range of zero to nine points based on a pre-established scoring system wherein aces count as one point, tens and face cards count as zero points and all other cards count as their face value and wherein a two-digit hand total is deemed to have a value corresponding to the one's digit of the two-digit total;

[i]) the dealer resolving the wagers based on whether the designated player's hand or the banker's/dealer's hand is nearest to a value of 0.

J.A. 10–11. The examiner rejected claims 1–18 as directed to patent-ineligible subject matter under § 101, applying the machine-or-transformation test described in *Bilski v. Kappos*, 561 U.S. 593 (2010). The examiner concluded that the claims represented "an attempt to claim a new set of rules for playing a card game," which

"qualifies as an abstract idea." J.A. 102. On appeal, the Board affirmed the rejection, applying the two-step test outlined in *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014), which had been decided in the interim. Applying step one, the Board determined that "independent claim 1 is directed to a set of rules for conducting a wagering game which . . . constitutes a patent-ineligible abstract idea." J.A. 16. Applying the second step, the Board concluded that "shuffling and dealing cards are conventional in the gambling art," and as such, "do not add enough to the claims" to render them patent eligible. J.A. 17.

Applicants appealed to this court, and we have jurisdiction pursuant to 28 U.S.C § 1295(a)(4)(A) and 35 U.S.C. § 141(a).

## DISCUSSION

We review de novo whether a claim is drawn to patent-ineligible subject matter. *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007). Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception. Laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (internal quotation marks, brackets, and citations omitted).

To determine whether an invention claims ineligible subject matter, we apply the now-familiar two-step test introduced in *Mayo*, *id.* at 1296–97, and further explained in *Alice*, 134 S. Ct. at 2355. First, we determine whether the claims at issue are directed to a patent-ineligible concept such as an abstract idea. *Id.* Second, we "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the

claimed abstract idea into a patent-eligible application." *Id*. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298).

On the first step, we conclude that Applicants' claims, directed to rules for conducting a wagering game, compare to other "fundamental economic practice[s]" found abstract by the Supreme Court. *See id*. As the Board reasoned here, "[a] wagering game is, effectively, a method of exchanging and resolving financial obligations based on probabilities created during the distribution of the cards." J.A. 15. In *Alice*, the Supreme Court held that a method of exchanging financial obligations was drawn to an abstract idea. 134 S. Ct. at 2356–57. Likewise, in *Bilski*, the Court determined that a claim to a method of hedging risk was directed to an abstract idea. 561 U.S. at 611. Here, Applicants' claimed "method of conducting a wagering game" is drawn to an abstract idea much like *Alice*'s method of exchanging financial obligations and *Bilski*'s method of hedging risk.

Moreover, our own cases have denied patentability of similar concepts as being directed towards ineligible subject matter. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (finding offer-based price optimization abstract), *cert. denied*, 136 S. Ct. 701 (2015); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007–08 (Fed. Cir. 2014) (determining that methods of managing a game of bingo were abstract ideas). Thus, in light of these cases, we conclude that the rejected claims, describing a set of rules for a game, are drawn to an abstract idea.

Our inquiry, however, does not end there. Abstract ideas, including a set of rules for a game, may be patent-eligible if they contain an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298). But appending purely conventional steps to an abstract idea does not supply a sufficiently

inventive concept. *Id.* at 2357–58. The claims here require shuffling and dealing "physical playing cards," which Applicants argue bring the claims within patent-eligible territory. J.A. 10–11. We disagree. Just as the recitation of computer implementation fell short in *Alice*, shuffling and dealing a standard deck of cards are "purely conventional" activities. *See Alice*, 134 S. Ct. at 2358–59. We therefore hold that the rejected claims do not have an "inventive concept" sufficient to "transform" the claimed subject matter into a patent-eligible application of the abstract idea.

That is not to say that all inventions in the gaming arts would be foreclosed from patent protection under § 101. We could envisage, for example, claims directed to conducting a game using a new or original deck of cards potentially surviving step two of *Alice*. The Government acknowledged as much during oral argument. *See* Oral Argument at 14:59–15:31, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1664.mp3.

Finally, we cannot address Applicants' argument that the PTO's 2014 Interim Guidance on Patent Subject Matter Eligibility ("Interim Eligibility Guidance") exceeds the scope of § 101 and the Supreme Court's *Alice* decision. Applicants' challenge to the Guidelines is not properly before us in this appeal. *See* 35 U.S.C. § 141(a) (stating that an applicant "dissatisfied with the final *decision*" of the Board may appeal that decision to the Federal Circuit) (emphasis added). As the Interim Eligibility Guidance itself states, it "is not intended to create any right or benefit, substantive or procedural, enforceable by any party against the Office. Rejections will continue to be based upon the substantive law, and it is *these rejections* that are appealable." Interim Eligibility Guidance, Vol. 79 Fed. Reg. 74618, 74619 (Dec. 16, 2014) (emphasis added). And even if the Applicants had properly challenged the Guidance, we have previously determined that

such Guidance is "not binding on this Court." *See In re Fisher*, 421 F.3d 1365, 1372 (Fed. Cir. 2005). Thus we decline to consider Applicants' argument regarding the Interim Eligibility Guidance.

We have considered Applicants' remaining arguments and find them unpersuasive. Because the rejected claims are drawn to the abstract idea of rules for a wagering game and lack an "inventive concept" sufficient to "transform" the claimed subject matter into a patent-eligible application of that idea, we affirm.

**AFFIRMED**