NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE:  STEVE MORSA,**
*Appellant*

---

2019-1757

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 13/694,192.

---

Decided:  April 10, 2020

---

STEVE MORSA, Thousand Oaks, CA, pro se.

COKE MORGAN STEWART, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu.   Also represented by KAKOLI CAPRIHAN, THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

---

Before NEWMAN, DYK, and WALLACH, *Circuit Judges.*

PER CURIAM.

Appellant Steve Morsa appeals the decision of the U.S. Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"), which affirmed the patent examiner's findings that all pending claims ("the Proposed

Claims") of Mr. Morsa's U.S. Patent Application No. 13/694,192 ("the '192 application") (S.A. 54–128)[1] were unpatentable subject matter under 35 U.S.C. § 101.[2] *See Ex Parte Morsa*, No. 2018-004483, 2018 WL 6573274, at \*4 (P.T.A.B. Nov. 20, 2018) (Decision on Appeal) **[S.A. 1–8]**; *see also* S.A. 11–20 (Decision on Request for Rehearing).

Mr. Morsa appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). We affirm.

### BACKGROUND

Entitled "Match Engine Marketing," the '192 application "relates generally to the field of advertising, and in particular to the field of matching advertisers with entities via computer networks." S.A. 54, 55. The '192 application explains that embodiments of the invention may provide "a new system of advertising where advertisers target the most interested consumers and entities by participating in a free market which attaches a monetary cost for an advertiser's listing in a match result list generated using advertiser-selected criteria." S.A. 63. This advertising technique targets interested consumers and entities based on "demographic, geographic, [and] psychographic factors[.]" S.A. 63. This advertising technique also provides "promoters a match engine that permits such promoters to influence a higher or lower placement in a match result list via a continuous, competitive online bidding process." S.A. 63.

---

[1]    "S.A." refers to the supplemental appendix filed by the Appellee, the Director of the USPTO.

[2]    Congress did not amend § 101 when it passed the Leahy-Smith America Invents Act. *See generally* Pub. L. No. 112-29, 125 Stat. 284 (2011).

Proposed independent claim 2 of the '192 application is representative[3] and recites:

A technical field improving technological process comprising:

transmitting by a computer system over a network for display to a user a request for demographic and/or psychographic user information;

receiving at the computer system over the network from the user the user information;

---

[3]   The PTAB determined that independent claim 2 was representative of the claims of the '192 application. *Morsa*, 2018 WL 6573274, at \*1; *see* Appellee's Br. 3 (stating that independent claim 2 is representative of all claims of the '192 application). Where a party "does not raise any arguments with respect to any other claim limitation, nor does it separately argue [the] dependent claim," "[the] dependent claim . . . stands or falls together with [the] independent claim." *Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1340 (Fed. Cir. 2020). On appeal, while Mr. Morsa disagrees with the PTAB's decision to treat independent claim 2 as representative, *see* Appellant's Br. 20–21 (arguing that "each and all of the [Proposed] [C]laims . . . are patentably distinct from each other" and thus, "[t]here are no representative claims" (emphasis omitted)), he only raises arguments pertaining to independent claim 2, *see id.* at 33, 37, 49–50 (stating that "the dependent claims add further significant eligibility confirming features," without discussing any dependent claims). Because Mr. Morsa does not separately argue any other claim, and because the PTAB treated independent claim 2 as representative, we will treat independent claim 2 as representative.

saving by the computer system the user information;

receiving at the computer system over the network from a first advertiser an association between (i) one or more first criteria comprising demographic and/or psychographic criteria and a first ad and (ii) a first bid, the bid being the highest amount the advertiser is willing to, but may not have to, pay, and the first ad;

receiving at the computer system over the network from a second advertiser an association between (i) one or more second criteria comprising demographic and/or psychographic criteria and a second ad and (ii) a second bid, the bid being the highest amount the advertiser is willing, but may not have, to pay, and the second ad;

determining by the computer system that a first match exists between the first criteria and the user information;

determining by the computer system that a second match exists between the second criteria and the user information;

in the event of both a first match and a second match, determining by the computer system placement of at least one of the first and second ads based on one or more ad placement factors comprising the first and second bids;

transmitting by the computer system at least one of the first and second ads over the network to the user.

S.A. 25–26.

## DISCUSSION

### I. Standard of Review and Legal Standard

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence[,]" meaning that "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re NuVasive, Inc.*, 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (internal quotation marks and citations omitted). "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (internal quotation marks, alterations, and citation omitted).

"We review issues unique to patent law, including patent eligibility under . . . § 101, consistent with our circuit's precedent." *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1367 (Fed. Cir. 2017) (internal quotation marks and citation omitted). "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of" Title 35 of the United States Code. 35 U.S.C. § 101. "The Supreme Court, however, has long interpreted § 101 and its statutory predecessors to contain an implicit exception: 'laws of nature, natural phenomena, and abstract ideas' are not patentable." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)).

The Supreme Court's decision in *Alice* provides the framework through which we assess patent eligibility under § 101. *See* 573 U.S. at 215–17. A patent claim is patent ineligible when " (1) it is 'directed to' a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered 'both individually and "as an ordered combination,"' do not add enough to '"transform the nature of the claim' into a patent-eligible application."' *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 217) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–80 (2012)).

## II. The Proposed Claims Are Directed to an Abstract Idea Under *Alice* Step One

The PTAB determined that independent claim 2 is "directed to the concepts of targeting advertisements for a user, and using a bidding system to determine how the advertisements will be displayed[,]" which are both directed to the "fundamental economic practices long prevalent in our system of commerce[,]" and that, therefore, independent claim 2 "is directed to an abstract idea[.]" *Morsa*, 2018 WL 6573274, at *2. Mr. Morsa argues that "advertising is real, tangible, and concrete" and, therefore, patent "eligibility [is] confirmed[.]" Appellant's Br. 44 (emphasis omitted) (capitalization normalized). Additionally, Mr. Morsa asserts that the PTAB erred because it identified more than one abstract idea and it is only supposed to identify "one and only one single alleged abstract idea." *Id.* at 26. We disagree with Mr. Morsa.[4]

---

4    Mr. Morsa asserts that because "[t]he Supreme Court and the Federal Circuit both use preemption as the mechanism to evaluate whether a claim is eligible or not[,]" his claims are not directed to an abstract idea because they

Independent claim 2 is directed to the abstract idea and fundamental economic practice of organizing human activity. For example, independent claim 2 recites a "process" that "transmit[s]" a "request for demographic and/or psychographic user information" to the user and then "sav[es]" the "user information" on the system to match the user to a specific advertiser. S.A. 25. We have explained that claims related to "customizing information based on (1) information known about the user and (2) [specific] data" are directed to abstract ideas. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015); *see Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 888 (Fed. Cir. 2019) (similar) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)); *see also Intellectual Ventures*, 792 F.3d at 1370 ("An advertisement taking into account the time of day and tailoring the information presented to the user based on that information is another 'fundamental . . . practice long prevalent in our system'" (quoting *Alice*, 573 U.S. at 219)). Here, the claim recites both targeted advertising and bidding to display the advertising, which are both abstract ideas relating to customizing information based on the user and matching them to the advertiser. *See RecongiCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract."). Because independent claim 2 of the '192 application relates to "the field of advertising" and "matching advertisers with

---

do not preempt all advertising. Appellant's Br. 43. During the PTAB proceedings, the PTAB addressed this argument and found it unpersuasive. *See Morsa*, 2018 WL 6573274, at *3. "While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). Therefore, Mr. Morsa's argument is without merit.

entities via computer networks," it is directed to an abstract idea.

### III. The Proposed Claims Do Not Recite an "Inventive Concept" Under *Alice* Step Two

The PTAB found that there was no "inventive concept" because independent claim 2 "fail[s] to transform the abstract nature of the claim into patent eligible subject matter[.]" *Morsa*, 2018 WL 6573274, at *4. The PTAB explained that the specification "describes using generic computer components such as network PC's, minicomputers, mainframe computers, cell phones, servers, match, engines, local area networks[,] and wide area networks in a conventional manner for the known functions." *Id.* at *3. Mr. Morsa argues that "[i]t is impossible for a claim that is novel and non-obvious under 35 U.S.C. [§] 102 and 35 U.S.C. [§] 103 to lack an inventive concept under [s]tep [two] of" *Alice.* Appellant's Br. 51 (emphasis omitted). We disagree with this generalization, for abstractness, novelty, and non-obviousness are separate legal and factual concepts.

Because independent claim 2 is directed to an abstract idea, the second step of the § 101 analysis requires us to determine whether the '192 application's claim limitations—when viewed individually and as an ordered combination—contain "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217 (internal quotation marks and citation omitted). A claim contains an inventive concept if it "include[s] additional features" that are more than "well-understood, routine, conventional activities[.]" *Id.* at 221, 225 (internal quotation marks, alterations, and citations omitted).

The limitations of independent claim 2 do not recite an inventive concept to transform their abstract idea into patentable subject matter. When claims, such as independent claim 2, are "directed to an abstract idea" and "merely

requir[e] generic computer implementation[,]" they "do[]
not move into [§] 101 eligibility territory[.]" *buySAFE,
Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014)
(internal quotation marks and citation omitted). Although
Mr. Morsa alleges that the Proposed Claims are "directed
to improving an existing technological process in the tech-
nical field of advertising over the Internet/computer net-
works[,]" Appellant's Br. 51 (emphasis omitted), we have
recognized that similar claims directed to advertising do
not "transform[] the abstract idea into a patent-eligible in-
vention[,]" *BASCOM Glob. Internet Servs., Inc. v. AT&T
Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016); *see id.*
at 1348 (explaining that claims "directed to filtering con-
tent on the Internet" are abstract); *see also Intellectual
Ventures*, 792 F.3d at 1370 ("[T]he fact that the web site
returns the pre-designed ad more quickly than a newspa-
per could send the user a location-specific advertisement
insert does not confer patent eligibility[.]"). Here, the claim
language recites targeted advertising and bidding for dis-
playing advertisements implemented using generic com-
puter components such as "network PC's," "cell phones,"
and "local area networks[.]" *Morsa*, 2018 WL 6573274,
at *3; *see In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016)
(explaining that when a claim does not add a practical ap-
plication or a specific limitation beyond the judicial excep-
tion that is not "conventional" in the field, the claims are
ineligible for patentability). Additionally, the functions
performed by the computer system at each step of the pro-
cess, such as "saving by the computer system the user in-
formation" and "receiving at the computer system over the
network," does nothing more than instruct the user on how
to implement the abstract idea using generic computer
components. S.A. 25. *See generally* S.A. 25–26 (Independ-
ent Claim 2). As such, when viewing the limitations of in-
dependent claim 2 individually and as an ordered
combination, they do not transform the abstract idea into
an inventive concept.

Moreover, Mr. Morsa must do more than simply restate the claim limitations and assert that the claims are directed to a technological improvement, such as "improving an existing technological process in the technical field of advertising over the Internet/computer networks[,]" Appellant's Br. 51 (emphasis omitted), without an explanation of the nature of that improvement, *see e.g.*, S.A. 25–26 (providing independent claim 2's determining steps). Mr. Morsa does not provide technological details concerning how the advertisement features are implemented to transform an abstract idea into an inventive concept. Here, Mr. Morsa simply states that his claims are not abstract because they were not rejected for anticipation or obviousness during prosecution and "for th[at] reason alone [they are] eligible." Appellant's Br. 51. Novelty of an invention, however, "does not avoid the problem of abstractness." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016); *see Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (providing that, even if we accept that a claim recites a method different from prior art, "a claim for a new abstract idea is still an abstract idea" (emphasis omitted)). Therefore, the claims of the '192 application are patent-ineligible at *Alice* step two. Accordingly, the PTAB did not err in holding the Proposed Claims patent-ineligible under § 101.

## CONCLUSION

We have considered Mr. Morsa's remaining arguments and find them unpersuasive. Accordingly, the Decision on Appeal of the U.S. Patent and Trademark Office is

## **AFFIRMED**