NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**C.R. BARD, INC., BARD PERIPHERAL VASCULAR, INC.,**
*Plaintiffs-Appellants*

**v.**

**ANGIODYNAMICS, INC.,**
*Defendant-Appellee*

---

2023-2056

---

Appeal from the United States District Court for the District of Delaware in No. 1:15-cv-00218-JFB-SRF, Senior Judge Joseph F. Bataillon.

---

Decided: December 15, 2025

---

DEANNE MAYNARD, Morrison & Foerster LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by SETH W. LLOYD, BRIAN ROBERT MATSUI; JOEL F. WACKS, San Francisco, CA; STEVEN CHERNY, Quinn Emanuel Urquhart & Sullivan, LLP, Boston, MA; MATTHEW A. TRAUPMAN, New York, NY.

DANIELLE VINCENTI TULLY, Cadwalader, Wickersham & Taft LLP, New York, NY, argued for defendant-appellee.

Also represented by JOHN T. AUGELLI, DAVID COLE, MICHAEL GLENN, JOHN MOEHRINGER, MICHAEL BRIAN POWELL.

———————————

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

PER CURIAM.

This case comes back to us after a retrial in the U.S. District Court for the District of Delaware in which a jury found that AngioDynamics, Inc. ("AngioDynamics") willfully infringed asserted claims of Bard Peripheral Vascular, Inc.'s ("Bard's") U.S. Patents 8,475,417 ("the '417 patent"), 8,545,460 ("the '460 patent"), and 8,805,478 ("the '478 patent"), and that the asserted claims were not invalid. Our prior decision had determined that the district court earlier had erred in determining that the asserted claims of those patents were ineligible for patent as being solely directed to printed matter. *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1384 (Fed. Cir. 2020). It left open the issue of anticipation, determining that there was a factual dispute and vacating the district court's grant of judgment as a matter of law ("JMOL") that the asserted claims were anticipated. *Id.* at 1384–85. But the district court on remand did not address our opinion apart from providing cursory background information, and simply granted AngioDynamics' post-trial motion for JMOL that the asserted claims were invalid as directed to patent-ineligible subject matter, indefinite, and anticipated. *CR Bard Inc. v. AngioDynamics, Inc.*, 675 F. Supp. 3d 462, 467–68 (D. Del. 2023) ("*Decision*"). Because we conclude that the district court did not err in granting JMOL on the ground of anticipation, we *affirm*.

## BACKGROUND

As this case has been here before, familiarity with the facts and history will be presumed and we will address only the issues decided and argued after remand.

Claims 1 and 5 of the '417 patent are representative for our analysis:

1. An assembly for *identifying a power injectable vascular access port*, comprising:

a vascular access port comprising a body defining a cavity, a septum, and an outlet in communication with the cavity;

*a first identifiable feature* incorporated into the access port perceivable following subcutaneous implantation of the access port, *the first feature identifying the access port as suitable for flowing fluid at a fluid flow rate of at least 1 milliliter per second through the access port*;

*a second identifiable feature* incorporated into the access port perceivable following subcutaneous implantation of the access port, *the second feature identifying the access port as suitable for accommodating a pressure within the cavity of at least 35 psi, wherein one of the first and second features is a radiographic marker perceivable via x-ray*; and

a third identifiable feature separated from the subcutaneously implanted access port, the third feature confirming that the implanted access port is both suitable for flowing fluid at a rate of at least 1 milliliter per second through the access port and for accommodating a pressure within the cavity of at least 35 psi.

5. The assembly according to claim 1, *wherein the radiographic marker is one or more radiographic letters.*

'417 patent col. 30 l. 51–col. 31 l. 6, col. 31 ll. 16–17 (emphases added).  In relevant part, the asserted claim of the '478 patent recites a method of using power injectable access ports, including the step of "identifying [an] indicating

radiographic feature on [an] x-ray." *See* '478 patent, col. 30 l. 58–col. 31 l. 4.

## DISCUSSION

Bard appeals the district court's grant of JMOL on ineligibility, indefiniteness, and anticipation. Bard also argues that the jury's verdict of willfulness should be reinstated, that the district court erred in alternatively granting a new trial, and that the case should be reassigned on remand. Because we determine that the district court did not err in granting JMOL on anticipation, we need not reach the other grounds on which the district court invalidated the claims.

## I

We review a district court's grant of JMOL according to the law of the regional circuit. *C R Bard*, 979 F.3d at 1378. The Third Circuit reviews a grant of JMOL *de novo*. *Id.* JMOL is appropriate here if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [Bard] on [anticipation]." *Id.* (citing FED. R. CIV. P. 50(a)(1)). Whether a claim or limitation is directed to printed matter, and therefore patent ineligible under 35 U.S.C. § 101, *Praxair Distrib. v. Mallinckrodt Hosp. Prods. IP*, 890 F.3d 1024, 1032 (Fed. Cir. 2018), is a question of law reviewed *de novo*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). "Anticipation is a question of fact that is reviewed for substantial evidence when tried to a jury." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1322 (Fed. Cir. 2008). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938).

At trial, AngioDynamics presented evidence that three prior art ports anticipate the asserted claims: Bard's "Adult Titanium Port" ("ATP"), AngioDynamics' "Vortex," and a third party's "Port-A-Cath."

Bard challenges the district court's conclusions that (1) the jury had no basis to find that the three prior art ports lacked the claimed "identifiable feature[s]" and "radiographic marker[s]"; (2) the claimed "radiographic letters" are printed matter not entitled to patentable weight; and (3) the jury had no basis to find that the three prior art ports are not power injectable. We address each in turn.

A

The district court correctly determined that the claimed "identifiable feature[s]" and "radiographic marker" require nothing more than a radiographically discernible feature, and further that "radiographic letters" are printed matter not entitled to patentable weight, and therefore cannot be used to distinguish the prior art. *See Decision*, 675 F. Supp. 3d at 482–83.

As we have already explained, "the content of the information conveyed by the claimed markers . . . is printed matter not entitled to patentable weight." *C R Bard*, 979 F.3d at 1382. The claimed "identifiable feature[s]," wherein one feature is a "radiographic marker," were construed as "perceivable attributes *that identify an access port as being structured for power injection*." J.A. 313 (emphasis added). That is the exact informational content that we have held is not entitled to patentable weight. *See C R Bard*, 979 F.3d at 1382 ("[W]e hold that the content of the information conveyed by the claimed markers—*i.e.* that the claimed access ports are suitable for injection at the claimed pressure and flow rate—is printed matter not entitled to patentable weight."). Similarly, the step of "identifying [an] indicating radiographic feature on [an] x-ray" in the asserted method claim merely requires identifying a radiographically discernible feature on an x-ray, *Decision*, 675 F. Supp. 3d at 485, and any requirement that the feature convey information about the port is merely a mental step to recognize printed matter, which is also not entitled to patentable weight, *see Praxair*, 890 F.3d at 1033

("Because claim limitations directed to mental steps may attempt to capture informational content, they may be considered printed matter lacking patentable weight.").

In our prior opinion, we explained that "the focus of the claimed advance is not solely on the content of the information conveyed, but also on the means by which that information is conveyed." *C R Bard*, 979 F.3d at 1384. In particular, "the radiographic marker in the claimed invention" "allows the implanted device to be readily and reliably identified via x-ray, as used during CT imaging." *Id*. Thus, the radiographic marker is entitled to patentable weight only to the extent it constitutes a structural feature that is radiographically discernible, not because of any meaning ascribed to it.

The district court determined that AngioDynamics' expert testimony that each of the prior art ports have a "distinctive, characteristic look" including a "distinctive shape" that is "readily identifiable," and Bard's expert's agreement that port shape and basic features would be among usual identifiable attributes via x-ray left no room for a reasonable jury to reject the radiographic identifiability of the prior art ports. *Decision*, 675 F. Supp. 3d at 483–84.

The district court did not err in these conclusions. At a minimum, the uncontroverted evidence shows that ATP has a radiographically discernible feature—its port shape. Bard stipulated that "[t]itanium vascular access ports were radiographically visible on X-ray before April 27, 2004." J.A. 5241. Bard's expert admitted that ATP's "port shape," suture holes, and other attributes are "perceivable via X-ray." J.A. 5965–66. Bard's own x-ray images confirm that

the ATP port shape is identifiable via x-ray.  J.A. 25788–89.[1]

Bard's contrary evidence does not create a genuine dispute of material fact.  Bard's expert testified that he could not "conclude anything about the port," J.A. 5925, and could not "see any of the etching," J.A. 5920–21.  But "etching" is not claimed, and the inability to "conclude anything about the port" goes to the informational meaning allegedly conveyed by the feature, which implicates printed matter not entitled to patentable weight.  Bard's expert's assertion that he could not see radiographically identifiable features on ATP, J.A. 5925, is conclusory and does not undermine his admission that its shape and other features are perceivable via x-ray, J.A. 5965–66.  Bard improperly relies on testimony and documents relating to identification for functionality, which is printed matter not entitled to patentable weight.  *See* J.A. 4609–14; J.A. 27196–97.[2]

---

[1]    Even assuming *arguendo* that the claims require the radiographic feature to be *capable* of conveying information, ATP would still satisfy that requirement.  AngioDynamics' expert testified about the "readily identifiable" radiographic features visible on ATP, including the "characteristic shape, the so-called 'Aunt Minnie' shape" in which "once I'm told what they are, I know what they are." J.A. 5760–62; J.A. 5785.

[2]    Assuming *arguendo* that the claim requires a port shape that is sufficiently distinctive to be *capable* of conveying identifying information, Bard's evidence that the subsequently developed PowerPort needed to be "uniquely discernible from other ports," J.A. 4609–14, does not refute that ATP possessed a distinctive port shape at the relevant time—*i.e.*, before PowerPort entered the market and before the priority date of the asserted patents.

Bard argues that we have already ruled that there was a dispute of material fact on whether "the claim requirement of a radiographic marker . . . was met by prior art ports," thus foreclosing the district court's grant of JMOL. Opening Br. 39–42. That argument ignores the full trial record. The complete evidentiary record—including Bard's own stipulations, expert admissions, and x-ray exhibits—establishes that ATP's port shape is a radiographically identifiable feature as a matter of law, leaving no genuine dispute for the jury.

Further, the district court also determined that the claimed "radiographic letter[]" is printed matter, reasoning that "[a] letter, after all, intrinsically conveys its typographical meaning, and Bard has pointed to no technical hurdle traversed by the asserted claims in making the radiographic marker a letter as opposed to any other indicia." *Decision*, 675 F. Supp. 3d at 483.

The district court did not err in reaching that conclusion. The letter aspect of the claimed radiographic letter is printed matter claimed for its communicative content and is not functionally related to the port. Similar to *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1161 (Fed. Cir. 2018), where we determined that markings on a die are printed matter not afforded patentable weight because "[e]ach die's marking or lack of marking communicates information to participants indicating whether the player has won or lost a wager" and "are not functionally related to the substrate of the dice," the claimed radiographic letter simply communicates information to a user indicating the port is power injectable and "do[es] not cause the [port] itself to become a manufacture with new functionality," *see id.*

Accordingly, the district court did not err in concluding that the "identifiable feature[s]" and "radiographic marker" require nothing more than a radiographically

discernible feature, and further that "radiographic letters" are printed matter not entitled to patentable weight.

## B

With the patent-ineligible printed matter not able to distinguish the prior art, Bard is left with its argument that the jury had substantial evidence to support its finding that the prior art ports were not structured for power injection, and therefore that the district court erred in granting JMOL.

The district court determined that Bard's expert admission that "at least some of [Bard's ATP] ports were structurally capable of the claimed flow conditions" left no room for the jury to reject AngioDynamics' contention that ATP was power injectable, and that "objective, documentary evidence confirmed [that] doctors" had used the prior art ports at the claimed flow rate of 1 milliliter per second. *Decision*, 675 F. Supp. 3d at 481, 485. The district court pointed to similar evidence for the two other prior art ports: a study showing achieved power injection in Port-A-Cath and a lab notebook showing the same for Vortex. *Id.* at 481–82.

The district court did not err in these conclusions. At trial, Bard's named inventor of the asserted patents admitted that some ATPs would "pass" power injection testing without failure. J.A. 4705–06. Another named inventor testified that ATP was "for sure" "capable of withstanding the pressures of power injection." J.A. 5624. And AngioDynamics presented testimony from its expert that ATP "is structured for power injection." *See, e.g.*, J.A. 5774. Because the undisputed evidence at trial demonstrated that ATP was capable of power injection, the jury had no reasonable basis to find that the prior art ports were not structured for power injection.

Bard argues that the jury had substantial evidence to find that ATP was not "structured for power injection"

because it presented evidence that (1) it modified ATP to create the PowerPort and (2) PowerPort was the first port to receive FDA approval for power injection. *See* Opening Br. 51–52. But Bard's first argument fails because Bard's inventor testified that ATP could sometimes withstand power injection, s*ee* J.A. 4505–09, and a prior art product that sometimes embodies a claimed invention can still anticipate the claimed invention, *see Hewlett-Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003). Bard's second argument also fails because there is no FDA approval requirement in the claim language or construction, and therefore a lack of FDA approval for power injection use does not mean that the prior art ports were not structured for power injection.

Bard presents substantially similar arguments for the other two prior art ports. *See* Opening Br. 47, 48–49. Bard similarly points to no evidence proffered at trial showing that those ports were not structured for power injection. Bard points only to evidence about the safety of power injection, submissions made to the FDA, and instances when the prior art ports were not used for power injection. *See, e.g.*, J.A. 5498–500, 5846. None of this disproves AngioDynamics' evidence that the prior art ports were structurally suitable for power injection. *See* J.A. 5416–19, 28345.

Accordingly, the district court did not err in concluding that the jury had no reasonable basis to find that the prior art ports were not structured for power injection.

For the foregoing reasons, the district court properly determined that the asserted claims were anticipated as a matter of law.

II

Because we affirm the district court's determination that the patents are invalid as anticipated, we need not reach Bard's arguments as to willful infringement, a new trial, and reassignment. *See Marrin v. Griffin*, 599 F.3d

1290, 1295 (Fed. Cir. 2010) ("There can be no infringement of claims deemed to be invalid."); *Zodiac Pool Care, Inc. v. Hoffinger Indus.*, 206 F.3d 1408, 1417 (Fed. Cir. 2000) ("Because we affirm the district court's grant of JMOL, it is not necessary to address the propriety of the conditional award of a new trial.").

## CONCLUSION

We have considered Bard's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the district court's grant of JMOL as to anticipation.

**AFFIRMED**