NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WALTER A. TORMASI,**
*Plaintiff-Appellant*

**v.**

**WESTERN DIGITAL CORPORATION,**
*Defendant-Appellee*

---

2020-1265

---

Appeal from the United States District Court for the Northern District of California in No. 4:19-cv-00772-HSG, Judge Haywood S. Gilliam, Jr.

---

Decided: August 20, 2020

---

WALTER A. TORMASI, Trenton, NJ, pro se.

ERICA WILSON, Walters Wilson LLP, Redwood City, CA, for defendant-appellee. Also represented by ERIC STEPHEN WALTERS; REBECCA L. UNRUH, Western Digital Corporation, Milpitas, CA.

---

Before WALLACH, CHEN, and STOLL, *Circuit Judges.*

Opinion for the court filed PER CURIAM.

Dissenting opinion filed by *Circuit Judge* STOLL.

PER CURIAM.

Appellant Walter A. Tormasi ("Tormasi") sued Appellee Western Digital Corporation ("WDC") in the U.S. District Court for the Northern District of California ("District Court"), alleging infringement of claims 41 and 61–63 ("the Challenged Claims") of U.S. Patent No. 7,324,301 ("the '301 patent"). A.A. 13–25 (Complaint).[1] The District Court issued an order concluding that Mr. Tormasi lacked capacity to sue under Federal Rule of Civil Procedure ("FRCP") 17(b), but did not "reach the standing issue." *See Tormasi v. W. Digital Corp.*, No. 19-CV-00772-HSG, 2019 WL 6218784, at *2 (N.D. Cal. Nov. 21, 2019) (Order); *see id.* at *2–3. For the limited purpose of reviewing the District Court's determination as to whether Mr. Tormasi has capacity to sue, we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).[2] We affirm.

---

[1] "A.A." refers to the appendix submitted with Mr. Tormasi's brief. "S.A." refers to the supplemental appendix submitted with WDC's brief.

[2] The District Court exercised jurisdiction under 28 U.S.C. § 1338, accordingly we have jurisdiction. *See Tormasi*, 2019 WL 6218784, at *2 (discussing the '301 patent); J.A. 13–14; *see Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1342 (Fed. Cir. 2003) ("[W]e have appellate jurisdiction if the district court's original jurisdiction was based in part on section 1338, as determined by the plaintiff's well-pleaded complaint." (citing *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 829 (2002)).

BACKGROUND[3]

Mr. Tormasi is an inmate in the New Jersey State Prison ("NJSP"), A.A. 133 (Declaration of Mr. Tormasi), and describes himself as an "innovator and entrepreneur," A.A. 13. NJSP maintains a "no-business" rule, which prohibits inmates from commencing or operating a business without prior approval from the Administrator. N.J. ADMIN. CODE § 10A:1-2.1 (2010); *id.* § 10A:1-2.2 (Administrator "means an administrator or a superintendent who serves as the chief executive officer of any State correctional facility within the New Jersey Department of Corrections."). While imprisoned, and without the Administrator's prior approval, Mr. Tormasi formed "an intellectual-property holding company[,]" A.A. 134, Advanced Data Solutions Corp. ("ADS"), A.A. 101 (Certificate of Incorporation). Mr. Tormasi appointed himself as "director," "Chief Executive Officer, President, and Chief Technology Officer" of ADS. A.A. 134; *see* A.A. 132–44.

In January 2005, Mr. Tormasi filed U.S. Patent Application No. 11/031,878 ("the '878 application"), which ultimately issued in January 2008, as the '301 patent.[4] A.A. 34. In early 2004 Mr. Tormasi, as ADS Director,

---

[3]    Because Mr. Tormasi appeals the dismissal of his Complaint pursuant to FRCP 12(b)(6), the facts recited herein draw on Mr. Tormasi's Complaint, "as well as other sources courts ordinarily examine when ruling on [FRCP] 12(b)(6) motions to dismiss, in particular, documents incorporated into the [C]omplaint by reference . . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[4]    Entitled "Striping Data Simultaneously Across Multiple Platter Surfaces," A.A. 34, the '301 patent "relates to the art of dynamically storing and retrieving information using nonvolatile magnetic random-access media, specifically hard disk drives," A.A. 36.

adopted resolutions that transferred Mr. Tormasi's rights in the '878 application for all shares of stock in ADS. A.A. 134.  However, Mr. Tormasi also asserts that in February 2005, he contingently assigned his complete right, title, and interest in the '878 application "and its foreign and domestic progeny to ADS." A.A. 95; *see* A.A. 94–95 (Assignment).  In May 2007, NJSP intercepted documents from Mr. Tormasi related to ADS, and determined that he "circumvented the procedural safeguards against inmates operating a business without prior approval."  A.A. 146 (Disciplinary Report).  NJSP "warned" him that "continued involvement with ADS" would "subject[] [him] to further disciplinary action."  A.A. 136.  Despite this warning, Mr. Tormasi continued his involvement with ADS by executing a corporate resolution that contingently transferred the '878 application from ADS to himself, in June 2007. A.A. 136–37.  Mr. Tormasi explained that the purpose of the contingent transfer was "to ensure that [his] intellectual property remained enforceable, licensable, and sellable to the fullest extent possible." A.A. 136.

On March 1, 2008, ADS entered an "inoperative and void" status, for non-payment of taxes.  A.A. 108 (capitalization normalized).  In late 2009, before executing the 2009 transfer, Mr. Tormasi suspected WDC of infringing upon the '301 patent after reading an article examining WDC hard drives.  A.A. 18.  Having been barred from filing suit on behalf of ADS by the District of New Jersey, Mr. Tormasi, while he was still incarcerated, directed ADS to adopt a corporate resolution to assign and transfer "all right, title, and interest" in the '301 patent to himself in December 2009.  A.A. 155 (2009 Corporate Resolutions), 157 (2009 Assignment).  Mr. Tormasi asserts that "[t]he purpose of the transfer in ownership was to permit [Mr. Tormasi] to personally pursue, and to personally benefit from, an infringement action against [WDC] and others."  A.A. 138.

In January 2019, at the direction of Mr. Tormasi, ADS again assigned to Mr. Tormasi "all right, title, and interest" in the '301 patent, as well as the authority "to pursue all causes of action and legal remedies arising during the entire term" of the '301 patent.  A.A. 27 (2019 Assignment).  Mr. Tormasi asserts that the "purpose for executing the [2019] Assignment . . . was to provide up-to-date evidence confirming" that he owned the '301 patent and "had express authority to sue for all acts of infringement."  A.A. 140.  In February 2019, Mr. Tormasi sued WDC for patent infringement.  A.A. 13, 20–24.  During the course of litigation, Mr. Tormasi learned that in 2008, ADS had entered an "inoperative and void" status.  *See* A.A. 76 (Motion to Dismiss).  In April 2019, WDC moved to dismiss Mr. Tormasi's suit for lack of standing and capacity to sue.  A.A. 56–86.  In November 2019, the District Court issued its Order, finding that Mr. Tormasi lacked capacity to sue, but did not "reach the standing issue."  *Tormasi*, 2019 WL 6218784, at *2.

## DISCUSSION

### I. Standard of Review and Legal Standard

"We apply regional circuit law to the review of motions to dismiss for failure to state a claim under [FRCP] 12(b)(6)," *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (citation omitted), here, the Ninth Circuit.[5]  The Ninth Circuit reviews a district court's decision to grant a motion to dismiss under FRCP 12(b)(6) de novo.  *See Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011).  To survive a motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."

---

[5]    FRCP 12(b)(6) provides that a party may assert by motion a defense of "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

We "review[] questions of law, including . . . capacity to sue under [FRCP] 17(b), without deference." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1307 (Fed. Cir. 2003) (citation omitted); *see Johns v. Cty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997) (reviewing a district court's decision as to "[a]n individual's capacity to sue" de novo). "Capacity to sue in federal district court is governed by [FRCP] 17(b)." *See S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014). Under this rule, an individual's capacity to sue is determined by "the law of the individual's domicile." FED. R. CIV. P. 17(b)(1). In New Jersey, "[e]very person who has reached the age of majority . . . and has the mental capacity may prosecute or defend any action in any court." N.J. STAT. ANN. § 2A:15-1 (2013). New Jersey inmates are further governed by New Jersey Administrative Code Title 10A ("Title 10A"), *see Tormasi v. Hayman*, No. CIVA08-5886(JAP), 2009 WL 1687670, at *8 (D.N.J. June 16, 2009), which sets forth regulations governing, inter alia, adult inmates in New Jersey's prisons, *see* N.J. ADMIN. CODE § 10A:1-2.1 ("N.J.A.C. 10A:1 through 10A:30 shall be applicable to State correctional facilities under the jurisdiction of the Department of Corrections"). For instance, under Title 10A, the "no business" rule provides that "commencing or operating a business or group for profit . . . without the approval of the Administrator" is a prohibited act. *Id.* § 10A:4-4.1(a)(3)(xix).

## II. The District Court Did Not Err in Dismissing Mr. Tormasi's Complaint for Lack of Capacity to Sue

The District Court concluded that "because New Jersey law prevents inmates from 'commencing or operating a business or group for profit . . . without the approval of the Administrator,'" Mr. Tormasi lacked capacity to sue WDC

for patent infringement. *Tormasi*, 2019 WL 6218784, at *2 (quoting N.J. ADMIN. CODE § 10A:4-4.1(a)(3)(xix)). Mr. Tormasi argues "that the [D]istrict [C]ourt erred by relying on the [no-business rule]." Appellant's Br. 31. Mr. Tormasi asserts that his lawsuit "cannot be construed as an unpermitted business activity" because it "seeks to enforce his personal intellectual-property rights."[6] *Id.* at 31–32. We disagree.

Mr. Tormasi's attempt to file this lawsuit as a personal action merely repackages his previous business objectives as personal activities so he may sidestep the "no business" regulation. Because these actions are a mere continuation of his prior business activities, we find that here, as in Mr. Tormasi's previous lawsuit, Mr. Tormasi's characterization of his suit as personal, as opposed to related to business, to be without merit. *Tormasi v. Hayman*, 443 F. App'x 742 (3d Cir. 2011). Mr. Tormasi is an inmate domiciled in New Jersey. A.A. 133. As such, New Jersey law applies in determining Mr. Tormasi's capacity to sue. *See* FED. R. CIV. P. 17(b)(1) (providing that "[c]apacity to sue . . . is determined . . . by the law of the individual's domicile"). While Mr. Tormasi contends that his capacity to sue is

---

[6]    Mr. Tormasi briefly asserts in his reply brief that he had the Administrator's "express or implied" approval to procced with his patent infringement suit. Appellant's Reply 19–20. He did not raise this argument in his opening brief or before the District Court. *See generally* Appellant's Br. 31–39; A.A. 109–44 (Opposition to Motion to Dismiss). Thus, Mr. Tormasi's argument is waived. *See Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971, 974 (Fed. Cir. 2020) ("[A]rguments not raised in an appellant's opening brief [are] waived absent exceptional circumstances."); *Game & Tech. Co. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1350–51 (Fed. Cir. 2019) (declining to consider a new argument raised for the first time on appeal).

solely determined by N.J. STAT. ANN. § 2A:15-1, *see* Appellant's Reply 14, which pertains to legal majority and mental capacity, *see* N.J. STAT. ANN. § 2A:15-1, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system[,]" *Price v. Johnston*, 334 U.S. 266, 285 (1948), *abrogated on other grounds by McCleskey v. Zant*, 499 U.S. 467 (1991). Mr. Tormasi is an inmate at a New Jersey prison, subject to Title 10A, which prohibits him from operating a business. N.J. ADMIN. CODE § 10A:4-4.1(a)(3)(xix). Therefore, the "no business" rule is applicable to Mr. Tormasi.[7]

---

7    On appeal, Mr. Tormasi argues that even if he violated the "no business" rule, it does not limit the scope of N.J. STAT. ANN. § 2A:15-1 for inmates. Appellant's Br. 32–33, 36–38. Mr. Tormasi did not, however, argue to the District Court that the "no business" rule cannot generally limit the scope of an inmate's capacity to sue. *See generally* A.A. 109–44. The argument is, accordingly, waived, and Mr. Tormasi has therefore conceded that the no business rule may limit his capacity to sue. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal[.]")); *see also Sage Prods. Inc. v. Devon Indus.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal."). The Dissent takes issue with this conclusion, understanding Mr. Tormasi to have preserved his argument by asserting below that the "no business" rule "'was never intended to supersede [his] right to file civil lawsuits in his personal capacity,'" but rather "that his capacity to sue is governed by § 2A:15-1, which requires only that he has 'reached the age of majority' and possesses 'mental capacity,'" leaving

Mr. Tormasi's counterargument that he has not violated the no business rule is unpersuasive. For example, we find the Third Circuit's reasoning persuasive, that Mr. Tormasi's unfiled patent application qualified as "commencing or operating a business or group for profit," as it was in furtherance of his intellectual property business. *See Tormasi*, 443 F. App'x at 745; *see also Stanton v. New Jersey Dep't of Corr.*, No. A-1126-16T1, 2018 WL 4516151, at *4 (N.J. Super. Ct. App. Div. Sept. 21, 2018), *cert. denied*, 218 A.3d 305 (N.J. 2019) (concluding that an inmate violated the "no business" rule by attempting to operate a publishing company). Here similarly, Mr. Tormasi's lawsuit is in furtherance of his intellectual property business by taking certain business actions purely to preserve the commercial value of his intellectual property. *See* A.A. 134. For instance, Mr. Tormasi asserts that he took "precautionary measures to ensure that [his] intellectual property remained *enforceable*, *licensable*, and *sellable* to the *fullest extent possible*." A.A. 136 (emphasis added). Mr. Tormasi

---

his "'imprisonment status or prison behavior . . . irrelevant to the capacity-to-sue standard.'" Dissent Op. 1–2 (quoting A.A. 123–24 (Opp'n to Mot. to Dismiss)). We disagree. Mr. Tormasi made these assertions in support of his argument that the "no business" rule would run afoul of the First and Fourteenth Amendments if the "no business" rule prevented him from filing suit while imprisoned, not whether the N.J. statute superseded the "no business" rule. A.A. 122, 125. The first time that Mr. Tormasi argues that "administrative regulations cannot supersede statutes," is on appeal, Appellant's Br. 32, where he also abandons his constitutional argument, Appellant's Reply 15–16. Moreover, Mr. Tormasi does not attempt to rebut WDC's waiver argument in his Reply. Appellant's Reply 15–16. Thus, Mr. Tormasi has not preserved his legal argument, and we need not decide whether Mr. Tormasi's newly proposed interpretation of the regulation is correct.

further asserts that "[t]he purpose of [one of his] transfer[s] in ownership was to permit [himself] to . . . personally benefit from, an infringement action against WDC and other entities." A.A. 136. Mr. Tormasi then sued WDC for infringing the '301 patent and sought damages of at least $5 billion. A.A. 24. Accordingly, Mr. Tormasi's patent infringement suit is in furtherance of operating an intellectual property business for profit, and, therefore, prohibited under the "no business" rule. N.J. ADMIN. CODE § 10A:4-4.1(a)(3)(xix); *see generally Tormasi*, 443 F. App'x at 742 (finding that an unfiled patent application qualified as a prohibited act under the New Jersey "no business" rule). Because New Jersey prohibits inmates from pursuing a business, N.J. ADMIN. CODE § 10A:4-4.1(a)(3)(xix), and because of Mr. Tormasi's repeated attempts to profit as a business from the patent, *see Tormasi*, 443 F. App'x at 742 (finding Mr. Tormasi's attempt to file a patent application qualified as operating a business for profit),[8] the District Court did not err when it determined that Mr. Tormasi

---

[8] The Dissent concludes that our "extension of the Third Circuit's reasoning to affirm the district court's holding that Mr. Tormasi lacks capacity to sue in this case is inappropriate given the facts of this case[,]" as "the present lawsuit involves only Mr. Tormasi's claim for alleged patent infringement, the Third Circuit's decision . . . , and the 'no business' rule should not be at issue at all." Dissent Op. 3. To the contrary, we do not cite to the Third Circuit's decision for the conclusion that Mr. Tormasi lacks capacity to sue, we cite it to demonstrate that Mr. Tormasi's patent lawsuit is in furtherance of his intellectual property business and that business violates the "no business" rule. *See Tormasi*, 443 F. App'x at 742, 745. Accordingly, it is appropriate for us to cite to the Third Circuit's decision to establish that Mr. Tormasi's conduct violated the "no business" rule. *See id.* (determining what conduct and activity constituted a violation of the "no business" rule).

lacked the capacity to bring this suit for patent infringement.[9]

### CONCLUSION

We have considered Mr. Tormasi's other arguments and each of the remaining issues raised on appeal, and find them to be without merit.[10]  Accordingly, the Order of the U.S. District Court for the Northern District of California, is

### **AFFIRMED**

---

[9]    It is conceivable that Mr. Tormasi might, in the future, attain capacity to sue, but under the circumstances of this case, the District Court did not err in concluding that he does not presently possess that capacity.

[10]    Mr. Tormasi argues that the District Court erred by dismissing his Complaint for lack of capacity to sue without first considering whether "the threshold standing/jurisdictional issue is resolved in his favor."  Appellant's Br. 2.  However, the actual issue raised by Mr. Tormasi is whether the District Court erred by not first determining if he met the "statutory prerequisite" of 35 U.S.C. § 281 (providing that "[a] *patentee* shall have remedy by civil action for infringement of his patent" (emphasis added)).  Because capacity to sue is a threshold question, which the District Court determined, the District Court did not err by not reaching the question of whether Mr. Tormasi was a patentee under § 281, as it became moot. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990) (finding that "it was necessary to resolve the threshold question of . . . capacity to sue").

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WALTER A. TORMASI,**

*Plaintiff-Appellant*

**v.**

**WESTERN DIGITAL CORPORATION,**

*Defendant-Appellee*

---

2020-1265

---

Appeal from the United States District Court for the Northern District of California in No. 4:19-cv-00772-HSG, Judge Haywood S. Gilliam, Jr.

---

STOLL, *Circuit Judge*, dissenting.

I respectfully dissent because I disagree with the majority that Mr. Tormasi waived his argument that the "no business" rule does not limit the scope of an inmate's capacity to sue under N.J. STAT. ANN. § 2A:15-1 (2013). *See* Maj. 8 n.7.  To the contrary, in his briefing to the district court, Mr. Tormasi asserted that the "no business" rule "was never intended to supersede [his] right to file civil lawsuits in his personal capacity." A.A. 123.  Mr. Tormasi further explained that his capacity to sue is governed by § 2A:15-1, which requires only that he has "reached the age of majority" and possesses "mental capacity."  A.A. 124.

(quoting § 2A:15-1).  Mr. Tormasi added that his "imprisonment status or prison behavior is irrelevant to the capacity-to-sue standard."  *Id.* (citing § 2A:15-1).  In my view, these assertions fairly preserved Mr. Tormasi's legal argument that the "no business" rule cannot generally limit the scope of an inmate's capacity to sue, especially in view of the fact that he is a pro se litigant.  *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) ("Where, as here, a party appeared pro se before the trial court, the reviewing court may grant the pro se litigant leeway on procedural matters . . . ." (italics removed)).

Indeed, Mr. Tormasi makes an important legal argument that the district court should have addressed in the first instance.  It makes little sense to narrow the New Jersey statute on capacity to sue in light of the "no business" rule, which is an administrative rule of the Department of Corrections that prescribes sanctions for certain "prohibited acts."  N.J. ADMIN. CODE § 10A:4-4.1(a) (2019).  Under this "no business" rule, the prohibited act of "commencing or operating a business or group for profit . . . without the approval of the Administrator" is subject to "a sanction of no less than 31 days and no more than 90 days of administrative segregation," *id.* § 10A:4-4.1(a)(3), as well as one or more of the sanctions listed at section 10A:4-5.1(i–j) of the New Jersey Administrative Code, which includes loss of correctional facility privileges, loss of commutation time, loss of furlough privileges, confinement, On-The-Spot Correction, confiscation, extra duty, or a referral of an inmate to the Mental Health Unit for appropriate care or treatment.  On its face, the "no business" rule does not include the loss of the capacity to sue as a punishment.  And, as Mr. Tormasi further noted in his briefing to the district court, limiting the capacity to sue statute based on the "no business" rule is inconsistent with another section of the same administrative code, which expressly provides that "[i]nmates have [the] constitutional right of access to the

courts."   A.A. 123 (alterations in original) (quoting N.J. ADMIN. CODE § 10A:6-2.1).

The majority relies heavily on *Tormasi v. Hayman*, 443 F. App'x 742 (3d Cir. 2011), an earlier case also involving Mr. Tormasi, in which Mr. Tormasi asserted that his constitutional rights were violated when prison officials confiscated his unfiled patent application under the "no business" rule. Rejecting Mr. Tormasi's argument that the "no business" rule did not apply to patent applications, the Third Circuit concluded that confiscation was a permissible punishment because Mr. Tormasi's intent to assign the patent application to his own corporate entity for selling or licensing purposes qualified as a violation of the "no business" rule. *Id.* at 745. As noted above, confiscation is one of the prescribed punishments for a violation of the "no business" rule. *See* N.J. ADMIN. CODE § 10A:4-5.1(i)(6). The majority's extension of the Third Circuit's reasoning to affirm the district court's holding that Mr. Tormasi lacks capacity to sue in this case is inappropriate given the facts of this case. *See* Maj. 7–10. Prison officials never enforced any disciplinary action or sanction under the "no business" rule against Mr. Tormasi; nor does Mr. Tormasi challenge any such action. Because the present lawsuit involves only Mr. Tormasi's claim for alleged patent infringement, the Third Circuit's decision in *Tormasi*, 443 F. App'x 742, and the "no business" rule should not be at issue at all. I respectfully dissent.