NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE:  OLIVER WENDEL GAMBLE,**
*Appellant*

---

2021-1848

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/541,132.

---

Decided:  January 18, 2022

---

OLIVER WENDEL GAMBLE, New York, NY, pro se.

BENJAMIN T. HICKMAN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrew Hirshfeld.  Also represented by SARAH E. CRAVEN, THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

---

Before NEWMAN, REYNA, and WALLACH, *Circuit Judges*.

PER CURIAM.

Appellant Oliver Wendel Gamble appeals the Patent Trial and Appeal Board's ("PTAB") affirmance of a final rejection of independent claim 1 of U.S. Patent Application No. 14/541,132 ("the '132 application") as anticipated.  *See*

S.A. 2–19 (Decision on Appeal).[1] Mr. Gamble appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). We affirm.

BACKGROUND

## I. The '132 Application

Entitled "Method and System for Interactive Notation and Text Data Storage with a Mobile Device," S.A. 53, the '132 application "relates generally to a method and system for improving the utilization of information obtainable from the utilization [of] text messaging . . . and of CODA (Callers, Operators, or Directory Assistance)." S.A. 54. The '132 application discloses a method relating to transmitting and storing alphanumeric text data. S.A. 34. Specifically, the '132 application discloses a method and system that "enables the user to electronically capture and store information transmitted to the user's phone in records stored in a searchable file." S.A. 56.

Independent claim 1 of the '132 application recites:

A method, comprising:

> *transmitting* and receiving alphanumeric text characters between a plurality of mobile device [sic] via a communication network, *storing* the transmitted and received alphanumeric text in records in a *searchable database file enabling the user to search* of the contents of the alphanumeric text in stored and generate search results unique to the database contents in response to a

---

[1] The PTAB affirmed the examiner's rejection of claims 1–3, 5–6, 18, and 19, however, Mr. Gamble only challenges the rejection of independent claim 1. *See* Appellant's Br.

> given string of alphanumeric characters
> entered by the user.

S.A. 3 (emphases added); *see also* S.A. 388–391.

## II. The Prior Art

### A. Ford

Entitled "Data Delivery," U.S. Patent Application No. 15/382,161 ("Ford") relates to the "sending of data" between two phones using a "send to caller" option. S.A. 467; *see* S.A. 463–70 (Ford). Specifically, Ford discloses "[a] method of sending data from a first party participating in a telephone call to a second party participating in the telephone call, comprising, in the terminal of the first party, storing . . . identifier data that identifies the second party." S.A. 463 (Abstract).

Ford explains that when a call is initiated by the first party, the processor in the first party's terminal "automatically stores" the second user's phone number "in the memory." S.A. 468. "If during the telephone call the first party wishes to send a data message to the [second] party," the first party may select the "send to caller option." S.A. 468. When the "send to caller" option is selected, the first party's terminal's "processor . . . automatically interrogates a database" and retrieves the stored number of the second party. S.A. 468.[2] The "send to caller" options enables a data message to be sent from the first party participant to the second party participant, without the first party having to stop and search for the data. S.A. 468. Such data messages include contact cards or a calendar appointment. S.A. 468. The delivery of the data "may include: Short

---

[2]    Ford explains that the processor is interrogating the database from memory. *See* S.A. 468; S.A. 468 ("The processor . . . is connected to read to and to write from the memory.").

Messaging Service (SMS) which is suitable for alphanumeric text." S.A. 468.

## B. Bautista

Entitled "Mobile Social Networking Systems and Methods," U.S. Patent Application No. 11/055,340 ("Bautista") "generally relates to social networking, and more particularly to social networking systems allowing location-aware, anonymous communication between communication devices." S.A. 475; *see* S.A. 470–81 (Bautista). Bautista discloses "systems and methods for communicating with others in a defined geographic area," which "may be through location-aware text messaging." S.A. 475. Bautista explains that "[c]ommunications from [a] first communication device may be relayed to a second communication device" through "a text message from the first communication device." S.A. 475.

Specifically, Bautista explains that a user will set up an account and that "the social networking server receives [the] mobile phone number associated with the user." S.A. 476. "[T]he social networking server . . . generate[s] a user passcode" that "may be a random alphanumeric character" and is "sent to the user in the form of an SMS text message that the user can receive on [a] mobile communication device." S.A. 477. To complete the account set up, the user enters the passcode at the social networking website. S.A. 477. After setting up the account, the user can create a profile and input demographic information that is "stored in a database associated with [the] social networking server." S.A. 477. The user can then use the social network to find "individuals that the user might be interested in meeting" that are "within close proximity." S.A. 477. For example, the user will send a SMS text code to the social networking server "that identifies the user's geographical location." S.A. 477. The database can be searched to match the user's profile with similar profiles of

other users.  S.A. 478.  Search parameters can comprise keywords used to query the database.  S.A. 478.

## DISCUSSION

### I. Standard of Review

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted).  "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," meaning that "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re NuVasive, Inc.*, 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (internal quotation marks and citations omitted).  "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (internal quotation marks, brackets, and citation omitted).

### II. Anticipation

### A. Legal Standard

"A person shall be entitled to a patent unless," inter alia, "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention[.]"  35 U.S.C. § 102(a)(1).[3]  A prior art

---

[3]    Congress amended § 102 when it passed the Leahy-Smith America Invents Act ("AIA").  Pub. L. No. 112-29, § 3(b)(1), 125 Stat. 284, 285–87 (2011).  Because the '132 application has an effective filing date on or after March 16, 2013 (the effective date of the statutory changes

reference anticipates a patent's claim "when the four corners of [that] . . . document describe every element of the claimed invention, either expressly or inherently, such that a person [having] ordinary skill in the art [('PHOSITA')] could practice the invention without undue experimentation." *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1356 (Fed. Cir. 2010) (internal quotation marks and citation omitted). A patent claim is anticipated only if each limitation is found within a single prior art reference, "arranged or combined in the same way as in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008). "Anticipation is a question of fact that we review for substantial evidence." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016) (citation omitted).

## B. Substantial Evidence Supports the PTAB's Conclusion that Ford Anticipates Independent Claim 1

The PTAB held that the Examiner had properly rejected claim 1 as anticipated based on Ford. S.A. 5–6. The Board identified two disputed limitations in independent claim 1: (1) the "transmitting" limitation and (2) the "storing" limitation, the latter of which includes the additional limitation of "a searchable database file enabling the user to search . . . the contents of the alphanumeric text." S.A. 4–5. Accordingly, we refer to this limitation as the "storing and searching" limitation. Mr. Gamble contends, however, that the PTAB erred by concluding that Ford discloses each and every limitation of independent claim 1. Appellant's Br. 1–10. Specifically, Mr. Gamble argues that the PTAB erred because Ford fails to teach the same storing and searching limitation, as recited in independent claim 1. *Id.* at 8–10. We disagree with Mr. Gamble.

---

enacted in 2011), the current AIA version § 102 applies, *see* Pub. L. No. 112-29, § 3(n)(1), 125 Stat. at 293.

Substantial evidence supports the PTAB's conclusion that Ford anticipates independent claim 1. Mr. Gamble challenges the PTAB's determination that Ford anticipates the storing and searching limitation of independent claim 1. *See* Appellant's Br. 6–10.[4] The storing and searching limitation of independent claim 1 recites:

> *storing* the transmitted and received alphanumeric text in records in a *searchable database file enabling the user to search* of the contents of the alphanumeric text in stored and generate search results unique to the database contents in response to a given string of alphanumeric characters entered by the user.

S.A. 3 (emphasis added); *see* S.A. 388. Ford discloses that when a call is initiated by the first party, the second party's phone number is "automatically *store[d]*" in the "memory." S.A. 468 (emphasis added). Ford further discloses that if the first party selects the "send to caller" option to send a data message, the first party's terminal's "processor . . . *automatically interrogates a database* . . . to obtain the destination address." S.A. 468 (emphasis added). Ford also discloses that the delivery of the data "may include: Short Messaging Service (SMS) which is suitable for alphanumeric text." S.A. 468. Accordingly, Ford teaches the storing and searching limitation found in independent claim 1 of "a searchable database file enabling the user to search . . . the contents of the alphanumeric text." Thus, Ford anticipates the storing and searching limitation.

Mr. Gamble's counterarguments are unpersuasive. First, Mr. Gamble argues that independent claim 1

---

4    Because Mr. Gamble concedes that Ford teaches the transmitting limitation, we only address the disputed storing and searching limitation. *See* Appellant's Reply Br. 12 ("The Ford patent only teaches on 'Transmit'").

employs a database, whereas Ford employs "[m]emory," which is "RAM." Appellant's Br. 9. This argument is meritless. Ford expressly discloses the interrogation of a database. S.A. 468 ("The processor . . . automatically interrogates a database using the telephone number stored . . . to obtain the destination address."). Moreover, the distinction between "[m]emory" and "database" is meritless because Ford explains that the first party's processor "is connected to read to and to write from the memory." S.A. 468. Accordingly, when Ford's processor is interrogating a database, it is interrogating a database from memory. S.A. 468.[5]

Second, Mr. Gamble argues that "[t]here is no teaching on storing and searching a database of [t]ext messages" in Ford. Appellant's Br. 9. Mr. Gamble ignores the fact that independent claim 1 broadly recites transmitting and storing "alphanumeric text characters," not text messages. S.A. 388. Relevant here, Ford discloses "[c]ontact" data and "[c]alendar" appointments, which fall within the broad definition of alphanumeric text characters. S.A. 468 ("an application that is text-based such as a Calendar, Contacts or text messaging."). Moreover, independent claim 1 does not require that the recited "alphanumeric text characters"

---

[5] In his reply brief, Mr. Gamble asserts for the first time that "Interrogation" is not the same as "Search." Appellant's Reply 8. He did not raise this argument in his opening brief nor is there any record that he raised it before the PTAB. *See generally* Appellant's Br. 1–10; S.A. 2–19. Thus, Mr. Gamble's argument is waived. *See Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971, 974 (Fed. Cir. 2020) ("[A]rguments not raised in an appellant's opening brief [are] waived absent exceptional circumstances."); *Game & Tech. Co. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1350–51 (Fed. Cir. 2019) (declining to consider a new argument raised for the first time on appeal).

be text messages. *See generally* S.A. 388; *see* Appellant's Br. 1–10 (failing to cite any portion of independent claim 1 that requires that the "alphanumeric text characters" be text messages). Additionally, Ford described the use of SMS text messages to deliver data. S.A. 468. With regards to searching, Ford discloses that when the "send to caller" option is selected, the first party's terminal's "processor . . . automatically interrogates a database" and finds the stored number of the second party. S.A. 468. Accordingly, independent claim 1 does not necessarily teach "on storing and searching a database of [t]ext messages." Appellant's Br. 9.

Third, Mr. Gamble argues that independent claim 1 teaches "a user controlled search, where the user manually enters a selected search criterion," whereas Ford "automatically execute[s] a search." Appellant's Br. 9. This argument is unpersuasive. Again, Ford explains that when the "send to caller" option is selected, the first party's terminal's "processor . . . automatically interrogates a database," however, the processor interrogates the database only when the first party manually selects the send to caller option. S.A. 468. As such, Ford teaches the same user controlled search as disclosed in independent claim 1. Accordingly, substantial evidence supports the PTAB's conclusion that Ford anticipates independent claim 1.

## C. Substantial Evidence Supports the PTAB's Conclusion that Bautista Anticipates Independent Claim 1

The PTAB held that the Examiner had shown by a preponderance of the evidence that Bautista anticipated independent claim 1. S.A. 13–14. Specifically, the PTAB found "Bautista's sending of alphanumeric characters to the user in the form of a SMS text message that the user receives on his mobile device discloses" the transmitting limitation of independent claim 1. S.A. 13. The PTAB also found that "Bautista's querying of a database with text messages teaches" independent claim 1's limitation of "storing . . .

alphanumeric text . . . in a searchable database file." S.A. 13. Mr. Gamble asserts that the PTAB erred in concluding that Bautista discloses independent claim 1's storing and searching limitation. Appellant's Br. 11–21. We disagree with Mr. Gamble.

Substantial evidence supports the PTAB's determination that Bautista anticipates independent claim 1. Mr. Gamble challenges the PTAB's determination that Bautista teaches the storing and searching limitation of independent claim 1. *See* Appellant's Br. 14–15.[6] Relevant here, Bautista discloses storing profiles and demographic information into a database that can be searched to match the user's profile with similar profiles of other users. S.A. 478. Bautista explains that a search command or search parameters "may be used to query the database" "in the form of an SMS text message sent from [a] mobile communication device." S.A. 478. Additionally, "[t]he search parameters may be in the form of keywords" to query the database. S.A. 478. Therefore, Bautista teaches "storing . . . alphanumeric text . . . in a searchable database file." S.A. 3. Thus, Bautista anticipates the storing and searching limitation of independent claim 1.

Mr. Gamble argues that Bautista does not teach independent claim 1's limitation of storing data on a mobile devise because Bautista teaches storing data on "a remote server." Appellant's Br. 14–15. This argument is unpersuasive. Independent claim 1 only recites storing the alphanumeric text "in a searchable database file" and does not specify where the searchable database file is stored.

---

[6] Because Mr. Gamble concedes that Bautista teaches the transmitting limitation, we only address the disputed storing and searching limitation. *See* Appellant's Br. 15 ("The first limitation is broadly accurate, in that the teachings [are] on sending and receiving text messages (alphanumeric text)").

S.A. 388.  Accordingly, independent claim 1 is not limited to mobile device storage.  Further, Bautista discloses that "[c]ertain social networking applications may . . . require specific software to be installed on the mobile communication device."  S.A. 475.  As such, Bautista contemplates storing alphanumeric text on a mobile device.  Accordingly, substantial evidence supports the PTAB's conclusion that Bautista anticipates independent claim 1.

## CONCLUSION

We have considered Mr. Gamble's remaining arguments and find them unpersuasive.  Accordingly, the Decision on Appeal of the U.S. Patent and Trademark Office's Patent Trial and Appeal Board is

## **AFFIRMED**

## COSTS

No costs.